[No. 19316. Department Two.—August 16, 1894.]

GEORGE W. COFFEE, Respondent, v. C. S. WILL-
IAMS, Appellant.

Account Stated.—An account stated is a document—a writing—which
exhibits the state of accounts between parties, and the balance owing
from one to the other.

Id.—New Contract—Cause of Action Upon Balance Agreed.—When
an account stated is assented to, either expressly or impliedly, it
becomes a new contract, and an action upon it is not founded upon the
original items, but upon the balance agreed to by the parties.

Id.—Memorandum—Final Settlement.—An account stated in order to
constitute a contract, should appear to be something more than a mere
memorandum, and should show upon its face with clearness and cer-
tainty that it was intended to be a final settlement up to date.

Id.—Defective Memorandum—Evidence—Disproof of Account Stated
—Pleading.—Where the account sued upon is a defective memorandum
of account, without dates, or any balance struck or stated, and the
answer denies that any account was stated, the court should allow great
latitude in introducing evidence to disprove it; and the rule that where
there is an account stated the parties cannot go back and attack the
original items of the account, unless upon proper averment of fraud
or mistake, does not apply where the main issue is whether there was
such an account.

Id.—Admissibility of Evidence—Nature of Partnership Business—
Character of Items—Issue as to Account Stated.—In an action
between partners involving an issue of fact as to whether an account
was stated between them, evidence touching the nature of the partner-
ship business of plaintiff and defendant, and the character of certain
items put in and omitted in the alleged account, is admissible upon
the question whether or not there was an account stated between the
parties.

Id.—Copy of Stated Account.—Where a stated account is sued upon, the
defendant is entitled to a copy of the alleged stated account, though
the plaintiff need not furnish the original items of the open account
upon which the alleged account was based.

APPEAL from a judgment of the Superior Court of
Kern County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

E. Rousseau, for Appellant.

The pretended stated account is not an account of
any kind. An account stated is an agreed balance of
accounts, the effect of which is to establish *prima facie*

the accuracy of the items without other proof, and to constitute a new contract on which an action will lie. (Bouvier's Law Dictionary, "Account Stated"; *Auzerais* v. *Naglee,* 74 Cal. 60.)   It does not, however, operate as an estoppel, and it may be impeached for fraud.   (1 Story's Equity Jurisprudence, sec. 523; *Green* v. *Thornton,* 96 Cal. 72; Lindley on Partnership, 536; *Clark* v. *Gridley,* 49 Cal. 106; *Auzerais* v. *Naglee,* 74 Cal. 60; Story on Partnership, sec. 206.)   An account stated between partners is void, as each partner must account to the partnership and not to the other.   (Civ. Code, sec. 2412; *Buckley* v. *Carlisle,* 2 Cal. 420; *Stone* v. *Fouse,* 3 Cal. 392; *Barnstead* v. *Empire Min. Co.,* 5 Cal. 300.)   The utmost good faith is required as between partners, and as Coffee concealed from Williams all things that the books could show, and was able to derive a private profit therefrom, he should be compelled in equity to account therefor, and the account should be reopened.   (*Sexton* v. *Sexton,* 9 Gratt. 204; *Hopkins* v. *Watt,* 13 Ill. 298; *Pomeroy* v. *Benton,* 57 Mo. 531; *Platt* v. *Platt,* 2 Thomp. & C. 25; *Potter's Appeal,* 56 Conn. 1; 7 Am. St. Rep. 272; Story on Partnership, secs. 172, 173, 232; Story's Equity Jurisprudence, secs. 307, 308, 311; Lindley on Partnership, 512, 513; 2 Pomeroy's Equity Jurisprudence, 902.)   At most, a stated account is only a contract, and a contract may be rescinded for such concealment and fraud. (Civ. Code, secs. 1565–67, 1688, 1689, subd. 1; 1 Wharton on Contracts, sec. 282; 2 Addison on Contracts, sec. 1218, Abbott's notes; *Alvarez* v. *Brannan,* 7 Cal. 503; *Pence* v. *Langdon,* 99 U. S. 578; *Place* v. *Minster,* 65 N. Y. 89; *Hall* v. *Perkins,* 3 Wend. 626; *Lester* v. *Mahan,* 25 Ala. 445.)   If defendant cannot have the account reopened, he should be allowed to falsify the items that are wrongfully charged to him, and that are placed to Coffee's credit; and to prove the known sales that were omitted from said account, and set forth in the answer. (*Gage* v. *Parmelee,* 87 Ill. 329; *Warden* v. *Marcus,* 45 Cal. 594; *Stretch* v. *Talmadge,* 65 Cal. 510; *Perkins* v. *Hart,* 11 Wheat. 237; *Klase* v. *Bright,* 71 Pa. St. 186; *Berkey* v.

*Judd,* 22 Minn. 287; *Steadwell* v. *Morris,* 61 Ga. 97; *McGunn* v. *Hanlin,* 29 Mich. 476; Story on Partnership, secs. 175, 181.) The defendant, upon his demand in writing for a copy of the account on which he was sued, was entitled to such copy, and it was error for the court to refuse to order a proper copy to be given the defendant. (*Providence T. Co.* v. *Prader,* 32 Cal. 638; 91 Am. Dec. 598; *Brown* v. *Calvert,* 4 Dana, 219; *Smith* v. *Hicks,* 5 Wend. 51; *Chrysler* v. *James,* 1 Hill, 214; *Johnson* v. *Mallory,* 2 Rob. (N. Y.) 683; *Estate of Swain,* 67 Cal. 637; Code Civ. Proc., sec. 454.)

*Mahon & Laird,* and *B. Brundage,* for Respondent.

A stated account is one that may be made by partners concerning the partnership transaction and dealings, and is as binding upon them when so made as is a stated account upon persons who are not partners. (Parsons on Partnership, 3d ed., *278–85.) Partial settlements between the partners either of particular branches of the business or the entire business up to a certain time are also conclusive, and an accounting will be permitted of the unsettled parts only. (17 Am. & Eng. Ency. of Law, 1286; *Clark* v. *Gridley,* 41 Cal. 119; *Stretch* v. *Talmadge,* 65 Cal. 510.) In order to successfully attack the allegation of the account stated on the ground of mistake or fraud, the mistake or fraud should have been properly pleaded. This was not done in this case. (Pomeroy's Remedies and Remedial Rights, secs. 687, 688; *Capuro* v. *Builders' Ins. Co.,* 39 Cal. 123; *Oroville etc. R. R. Co.* v. *Supervisors etc.,* 37 Cal. 354; *Kent* v. *Snyder,* 30 Cal. 666; *Hendy* v. *March,* 75 Cal. 566.) The assent to an account necessary to make it an account stated may be implied. The simple rendering of an account between the parties and agreeing upon the amount due are sufficient facts upon which to maintain an action. (1 Am. & Eng. Ency. of Law, 111; *Terry* v. *Sickles,* 13 Cal. 427; *Hendy* v. *March,* 75 Cal. 566; *Auzerais* v. *Naglee,* 74 Cal. 60.)

McFarland, J.—Defendant appeals from a judgment in favor of plaintiff, and also from an order denying defendant's motion for a new trial.

It is averred in the complaint (in brief) that on November 13, 1888, the two parties formed a copartnership in the business of farming and stock-raising, which continued until June 2, 1891, when it was dissolved by mutual consent; that they contributed equal amounts of capital and were to share equally in profits and losses; that on February 5, 1891, they had an accounting of all their partnership dealings down to that date, and thereupon "an account was stated" between them of all said dealings, and upon such statement a balance of $1,851.96 was found due from defendant to plaintiff; and "that the said defendant then and there acquiesced in said statement and agreed to pay said balance," but has refused to pay the same or any part thereof. It is also averred that after said February 5th, and up to June 2d—the date of the dissolution—there were certain other partnership transactions upon which defendant is further indebted to plaintiff, and that there is certain partnership property remaining to be disposed of. The prayer is: 1. For judgment against defendant for said $1,851.96, alleged to be due on said account stated; and 2. That an account be taken of all partnership dealings subsequent to said February 5th, and that there be a final settlement and distribution of any property left after payment of debts, etc. The alleged stated account is not set forth in the complaint. There is merely a general averment that there was such an account, and that there is due thereupon from defendant to plaintiff the said sum of $1,851.96.

The answer admits the formation and dissolution of the copartnership at the times stated in the complaint, but avers that it included buying and selling and dealing in livestock as well as stock-raising. It denies that the parties put equal amounts of capital in the business, and avers that defendant contributed $7,310 of capital, and plaintiff only $3,110. It denies that on February,

5, 1891, or at any other time, there was an accounting of all the partnership dealings, or that any account was stated between the parties, or that a balance was struck of $1,851.96, or any other sum, or that defendant acquiesced in any statement, or agreed to pay to plaintiff, or to said partnership, said sum, or any sum, of money. There are many other averments in the answer to the effect that defendant was ignorant of business, and intrusted the entire management of the partnership to plaintiff; that plaintiff, intending to defraud defendant, kept no books of accounts, and concealed from defendant the business transactions of the partnership. The following averment in the answer was on motion of plaintiff stricken out by the court, viz: "That on the fifth day of February, 1891, the plaintiff and defendant were in Bakersfield and went to the store of one Dave Hirshfeld to confer about their partnership affairs; at which time and place plaintiff procured to be written in a book, which the plaintiff then and there had, certain words and figures, an exact copy of which is hereto annexed, marked 'Exhibit A,' and made a part of this answer. That no settlement was made on said fifth day of February, 1891, by or between plaintiff and defendant of any partnership dealings or transactions, and no balance was figured up as to any indebtedness of plaintiff or defendant, and no promise was made by either to pay the other any sum of money whatever." The answer further avers that plaintiff made large sales of partnership property to several named persons of which no mention is made in said Exhibit A, and specifies large items in the same which are alleged to be incorrect and false. Numerous general averments of fraud are also made in the answer against plaintiff; and it contains other averments not necessary to be here mentioned.

The court found that there was an account stated as averred in the complaint, and gave judgment for plaintiff for its amount; and the case having been referred to take an account of the partnership dealings sub-

sequent to said February 5th, and the referee having made his report, a final decree was entered. The main contest on the appeal is about said stated account.

The only document—or copy of a document—purporting to be the account stated relied on by plaintiff, which we are able to find in the transcript, is the Exhibit A attached to defendant's answer. Plaintiff, so far as we have discovered, did not introduce in evidence any stated account. He offered at one time certain pages of a book, which, as we suppose, were intended to show said account; but an objection to the book was at that time sustained, and we do not find when he again offered the book or any other writing purporting to be a stated account. Defendant demanded the account of plaintiff under section 454 of the Code of Civil Procedure, but it was not furnished. Plaintiff's witness, Hirshfeld, testified that he made the stated account in a book of plaintiff, and also copied it in a book of defendant; and, as Exhibit A was a copy from defendant's book, we assume that Exhibit A is the alleged account stated sued on. It is as follows:

"Investment of C. S. Williams, 7,310.

|  | "Drawn. | | Credits. | |
|---|---|---|---|---|
|  | "2,000 | 00 | 633 | 49 |
|  | "2,700 | 00 | 25 | 00 |
|  | " 301 | 50 | 10 | 00 |
|  | " 109 | 50 | 30 | 00 |
|  | " 50 | 25 | 66 | 49 |
|  | " 100 | 00 | 111 | 00 |
|  | " 39 | 00 |  |  |
|  | " 352 | 88 |  |  |
| "1891. | 5,698 | 13 | 875 | 98 |
| "Feb. 5th, bill D. H. | 170 | 45 | 31 | 26 |
| "Feb. 5th, Cash | 500 | 00 | 220 | 00 |
| " Investment of Geo. W. Coffee, |  |  | 3,110 | 00 |
| " Investment of Geo. W. Coffee, |  |  | 3,000 | 00 |
|  |  |  | "$6,110 | 00 |

| "Drawn. | Credits. |
|---|---|
| "1,000 00 | 668 63 |
| " 100 00 | |
| " 604 04 | |
| " 684 78 | |
| "2,388 82 | 668 63 |

"Feb. 5th, Bill D. H.   117.80."

It is doubtful if the foregoing would, under any view, constitute an independent cause of action as an account stated.   An account stated is a document—a writing— which exhibits the state of account between parties and the balance owing from one to the other; and when assented to, either expressly or impliedly, it becomes a new contract.   An action upon it is not founded upon the original items, but upon the balance agreed to by the parties.   And the general rule is that when the stated account is admitted, it can be avoided only by averment and proof of fraud, mistake, etc.   (6 Wait's Actions and Defenses, 424 et seq.; 1 Wait's Actions and Defenses, 191 et seq.; *Hendy* v. *March*, 75 Cal. 566, and cases cited.)   But the account, in order to constitute a contract, should appear to be some thing more than a mere memorandum; it should show upon its face that it was intended to be a final settlement up to date.   And this should be expressed with clearness and certainty.

The account sued on in the case at bar as an account stated is certainly very loose and unsatisfactory.   But few items of account are given; there are no dates except one; dollar marks are not even placed before the figures; and there is *no balance* struck or stated.   It looks like a mere memorandum put together hastily for further consideration—not like so important a writing as an account stated.   It is possible, perhaps, for an account stated, which does not state a balance, to be good, if, from a calculation upon the figures given, a balance can be ascertained; but an account sent by a merchant or banker, without any balance stated, would be a rare document.   However, a calculation of the figures writ-

ten in Exhibit A will not give the balance asserted by plaintiff, viz., $1,851.96. It would differ from that result to the extent of at least $500. Plaintiff would explain that by saying that the item of $500, of the date of February 5th, accrued after the alleged settlement. Nevertheless, it is part of the alleged stated account.

Assuming, however, that the paper in question is not so deficient in form that it could not, upon any proof, pass muster as an account stated, still it is clear that defendant, under the positive denials in the answer, should have been allowed great latitude in introducing evidence to disprove it; and we think that the court erred in sustaining objections to evidence which he offered on that point. The evidence of plaintiff on the point consisted of his own testimony and that of his witness, Hirshfeld, who was very friendly to plaintiff; and it was to the general effect that some time in the month of February, 1891, plaintiff and defendant, together with Hirshfeld, met at the store of the latter to "see how we stood up to date": that they had squabbles over certain matters, but that finally, on February 5th, they settled; that what is called the account stated was made by Hirshfeld in a book of plaintiff, and afterwards copied in a book of defendant; that a balance was struck showing that defendant owed plaintiff $1,851.96, and that defendant acquiesced therein, and agreed to pay said sum.

Defendant, on his part, testified that he met plaintiff at Hirshfeld's, because there was some company debts to be paid—particularly a debt to one Dinkelspiel—and to get some idea or knowledge how the company stood; that plaintiff's books "did not show much of any thing"; that he could not tell any thing about the account, and did not have any thing he could settle by; that he had defendant charged with different sums of money, which he objected to; that they then settled with Dinkelspiel, and paid his bill; that plaintiff said that Hirshfeld's bills had been forgotten, and he would bring them next morning; that he did not bring them

next morning, but they settled with Hirshfeld, and then "quit." He further testified that plaintiff had sold stock, of which there was no account on his books; that defendant had trusted the whole business to plaintiff (which plaintiff admits), and that there were no accounts kept upon which any settlement could be made; that plaintiff had put into the capital stock only $3,110, as shown by said alleged account stated, and that he had not put in the second item of $3,000, or any part of it; that the $2,700 charged to defendant should have been only $2,100, and was money paid for defendant to one Kraus; that the $2,000 charged to defendant was wholly incorrect; that various other items in said alleged stated account were incorrect; and that large transactions were not mentioned in said account. In defendant's answer it is averred that between the commencement of the partnership and said February 5th plaintiff sold to certain parties named therein cattle to the amount in money of over $36,000.

Now, as to the question whether or not there had been an account stated as alleged in the complaint, there was the testimony of plaintiff and Hirshfeld on the one side, and the testimony of defendant on the other. Under this condition of the testimony defendant sought to introduce evidence of circumstances which he claimed would tend to show that it was—if not impossible—at least highly improbable that he ever agreed to such an alleged account stated as that averred in the complaint. This evidence was ruled out by the court upon the theory that when there is an account stated parties cannot go back and attack the original items of the account unless upon proper averment of fraud, mistake, etc. This is no doubt the rule when the account stated is admitted, but in the case at bar the main issue was the question whether *there was* such an account. While that issue was before the court, of course, no evidence about the original items was admissible for the purpose of surcharging the account; but in determining the existence of the stated account the court was not con-

fined to considering the mere naked "yes" and "no" of the witnesses. The defendant had the right to show, if he could, the inherent improbability of his agreement to such an account; and to that end evidence was admissible of at least the general nature of the circumstances of the business between the parties, and the character of the objections made by defendant to the items of the alleged account stated. If, for instance, it be true that the item of $2,700 should be only $2,100; that the item of $2,000 is false; that plaintiff contributed only $3,110, instead of $6,110, to the capital stock; that plaintiff, who conducted the whole business, had kept no accounts and had nothing to present as a basis of settlement; that there was over $30,000 worth of stock sold by plaintiff which formed no part of the alleged statement of account, and that defendant in the attempts at settlement had objected to all these things—then these matters were proper for the court to consider in determining whether defendant acquiesced in an account so radically different from the truth and from his own contentions. If after considering these matters the court should be of the opinion that there was an account stated as alleged, it would sustain the account without reference to the original items; and if, after such consideration, it should think the preponderance of evidence to be against the stated account, it would so find, and would *then* order an account to be taken *de novo* of all the partnership dealings. But in determining the first question before it, was there an account stated as averred, the court erred in ruling out a great deal of evidence offered by defendant.

There were about seventy rulings of the court sustaining objections to questions asked by defendant, each followed by an exception. Some of them were asked in cross-examination of plaintiff's witnesses, and others of them were asked of defendant and his witnesses. They are too numerous to be each noticed here. Some of them were, perhaps, for special reasons properly ruled out, but most of them should have been admitted. What

we have said will clearly enough show our views on the subject, namely, that evidence touching the nature of the partnership business of plaintiff and defendant, and the character of certain items put in and omitted from the alleged account, is admissible upon the point whether or not *there ever was* such an account stated as that relied on by plaintiff. A few instances of objections sustained will be sufficient to illustrate our meaning. Upon cross-examination of plaintiff an objection was sustained to this question: "He put in considerably more property than you did." Plaintiff having testified that he did not know if there was any indebtedness due the firm from third persons when the alleged account was taken, but there might have been, was asked by defendant this question: "Then it was taken into the account, if you talked it over?" and objection was sustained. Objection was also sustained to this question asked of plaintiff: "I will ask you if there was not considerable difficulty about a certain transaction in which Mr. Charley Kraus had received some money from Mr. Williams, and that there was a variance between your accounts and Mr. Williams' of $600?" Also to the following question asked of plaintiff's witness, Hirshfeld: "Do you know how much money has been paid in by either of the firm previous to that settlement?" Also to the question: "Now this $2,700, what was that?" Objection was sustained to this question asked of defendant: "Now, that first item, $2,000: state what you know about that?" Also to the question: "I will ask you, Mr. Williams, if, on the fifth day of February, 1891, at the store of Dave Hirshfeld, any account was settled or gone into in relation to the number of cattle bought and sold, or the amount of money received from the sales of cattle of the partnership?" Also to the question whether there was any account or settlement on that day of partnership money. Also to the question whether there was any settlement or computation of amounts due to outside parties. Also to the question: "Was there any settlement as to how much Mr. Coffee

or Mr. Williams, or either of them, or both, owed to Mr. Hirshfeld for partnership goods bought previous to that time?" Also to the question: "I will ask you, Mr. Williams, if you ever made any further efforts in adjusting the matter in regard to that $2,700?" Hirshfeld, having been recalled by plaintiff, and having stated on cross-examination that ·he had made the accounting between the parties on February 5th, and found the balance of $1,851.96, was asked this question: "Have you in your possession the amounts and items from which you struck that balance?" and objection to the question was sustained. Defendant having testified that he did not acquiesce in the statement copied in his book by Hirshfeld, and that "the items of that statement were discussed by Coffee and me," was asked by his counsel this question: "State what items and what was said," and an objection to this question was sustained. Objection was also sustained to the following question: "State, Mr. Williams, what was the point of difficulty, and if it is so, that you were eight or ten days laboring on that settlement, what was the difficulty?" (Plaintiff had testified that they were eight or ten days in settling.) The witness, Hirshfeld, having testified that his books showed· how much money he had paid out on the checks of each party and of both parties, was asked how much had been so paid out on each party's check; and objection was sustained. Objection was also sustained to the question, how much money he had received from each party. ꞏ The court also refused to allow defendant to prove by the witness, Dinkelspiel, that he had received into his possession over $17,000 of the funds of the partnership of plaintiff and defendant, and sustained an objection to this question asked of the witness, Briggs: "State, Mr. Briggs, whether or not Mr. Coffee told how much he had made by selling the cattle of the partnership?"

The foregoing questions and many others of a similar kind should have been allowed. It would certainly be difficult to believe that the defendant acquiesced in the

alleged account stated, and promised to pay the alleged balance, if the things which he sought to prove are true. The errors committed in excluding said evidence are clearly material, and make necessary a reversal of the judgment and order appealed from.

We do not think that the appellant was prejudiced by the order of the court striking out of his answer the matter hereinbefore shown to have been stricken out, for the answer was left sufficiently full to cover the things sought to be proven in defense.

We do not think that the attempted averments of fraud in the answer were specific enough to warrant a defense upon that ground.

The respondent should have given to appellant a copy of the alleged stated account sued on.   He need not have furnished the original items of the open account upon which the alleged stated account was based, but a copy of the stated account itself should have been furnished.

Before another trial each party should be allowed, if he so desire, to make proper amendments to his pleadings.   We cannot refrain, however, from expressing the hope that they may be able to arrive at an amicable settlement of their difficulties.   Considering the confused state of their accounts it will be hard for a court to arrive at a just solution of their contentions; and it would be better for each to concede something than to prolong expensive and perhaps ruinous litigation.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

Fitzgerald, J., and De Haven, J., concurred.